WILLIAM F. ZELLER, Respondent, *v.* JOSEPH LEITER, Appellant.

GAMBLING CONTRACTS — ACTION UPON PROMISSORY NOTE GIVEN TO SETTLE DIFFERENCES IN SPECULATION IN GRAIN — ILLINOIS STATUTES — EVIDENCE. Where, in an action upon a promissory note given and made payable in the state of Illinois, the defense was interposed that the note was given for a balance arising out of wagering contracts for the purchase of grain, and that it was void under the statutes of the state of Illinois, which prohibit such contracts and declare that any note or other evidence of debt given or entered into in consideration of or in pursuance of such contracts shall be void and of no effect, it is reversible error to exclude, as incompetent, evidence relating to the transactions out of which grew the note in question, designed to show that it was the intention of the defendant, and also of the payees of the note,

merely to speculate in differences in the market value of grain without contemplating any actual delivery or receipt thereof; since under the Illinois authorities, involving the construction of the statutes of that state directed against gambling contracts in grain, the intention that there shall be no actual delivery must co-exist in the minds of both parties to the contract; and when the trial court excluded such evidence it thereby prevented him from proving an essential element of his defense.

Zeller v. Leiter, 114 App. Div. 148, reversed.

(Argued June 5, 1907; decided October 29, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 22, 1906, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alton B. Parker, J. D. Ronan Baldwin* and *Claude T. Dawes* for appellant. The trial court erred in excluding evidence offered by defendant. (*McCarthy* v. *Meany*, 183 N. Y. 190; *Peck* v. *Doran & Wright Co.*, 57 Hun, 343; *Kingsbury* v. *Kirwan*, 77 N. Y. 612; *Story* v. *Solomon*, 71 N. Y. 420; *Bigelow* v. *Benedict*, 70 N. Y. 204; *Bartlett* v. *Slucher*, 215 Ill. 350; *Weare* v. *People*, 209 Ill. 528.)

*William F. Goldbeck* and *Bainbridge Colby* for respondent. There were no errors in the exclusion of evidence. (*Scanlon* v. *Warren*, 169 Ill. 142.)

WILLARD BARTLETT, J.   This is an action on a promissory note made at Chicago on December 15, 1898, whereby the defendant promised to pay to the order of Allen, Grier and Zeller Company in that city three years after date the sum of $52,021.97, with interest at the rate of three per cent per annum.

The defense was that the plaintiff, being the liquidating trustee of Allen, Grier and Zeller Company, an Illinois cor-

poration, and formerly its treasurer, had acquired the note with full cognizance of the fact that it was given for a balance arising out of wagering contracts for the purchase of wheat and other grain, and consequently that it was void under the law of Illinois, where the said note was given and was payable.

After the defendant had introduced evidence in support of this affirmative defense, and had sought to give other evidence which was excluded upon objection and over his exception, the trial court directed a verdict against him for the full amount of the note with interest. The judgment entered upon this verdict has been unanimously affirmed by the Appellate Division.

The Illinois statutes upon which the defense is based read as follows:

" Section 130.   Gambling in Grain. Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain, or other commodity   *   *   * or corners the market, or attempts to do so in relation to any of such commodities, shall be fined not less than $10 nor more than $1,000, or confined in the county jail not exceeding one year, or both, and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

" Section 131.   Gaming contracts.   All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities, or conveyances made, given, granted, drawn or entered into or executed by any person whatsoever where the whole or any part of the consideration thereof shall be for any money, property or other valuable thing won by any gaming   *   *   *   shall be void and of no effect."

" Section 136.   No assignment of any bill, note, bond, covenant, agreement, judgment, mortgage or other security or conveyance as aforesaid shall in any manner affect the defense of the person giving, granting, drawing, entering into or executing the same, or the remedies of any person inter-

ested therein." (Criminal Code of Illinois, chap. 38; Hurd's Rev Stat. of Illinois, 1905, pp. 698, 699, 700.)

It was conceded by counsel for the plaintiff upon the trial that if a defense under these statutes was good against the payee of a note it was good against the indorsee.

The defendant endeavored to establish a defense thereunder against the payee by testifying that it was not his intention at the time of making any of the contracts which formed the basis of the note in suit to call for wheat or deliver wheat, but that he intended simply to settle with Allen, Grier and Zeller Company on differences. His counsel realizing that the defendant's intention, alone and of itself, was not enough to bring the contracts within the prohibition of the law, but that such intention must be shared by the other party as well, tried to prove the existence of a like intention on the part of Allen, Grier and Zeller Company, by asking the defendant whether he had any conversation with any member of that concern which would tend to show what their intention was. This question was objected to as leading, and if the ruling of the learned trial judge in sustaining the objection had been limited to the form of the interrogation, counsel for the defendant would doubtless have changed it. But the court went further than counsel for the plaintiff, and declared that the question was incompetent, saying, "The court also excludes it as incompetent;" thus giving counsel for the defendant to understand, in the plainest and most unmistakable manner, that the court would not permit the defendant to prove by means of conversations between him and the payees of the note that they shared his intention merely to speculate in differences in the market value of grain, without contemplating any actual delivery or receipt thereof.

I think that the defendant's exception to this ruling presents error which requires the reversal of this judgment. If I understand the position of the learned Appellate Division on this question, it is that the ruling was correct under the authority of *Scanlon* v. *Warren* (169 Ill. 142). That case, however, so far as it has any possible application here, only

decided that the undisclosed intention of one party to a grain contract to violate the law, or make a contract which could not be enforced, did not affect the right of the other party to recover money advanced upon an agreement which by its terms was legally valid. The court says : "It was not claimed that his intention in this respect was communicated to the plaintiffs or that they had any conversation with him on that subject." Here, on the contrary, the manifest effort of defendant's counsel, in which he was thwarted by the ruling of the trial judge, was to prove a conversation with the payees of the note in suit which would show that they shared the plaintiff's intention as to what was to be the character of the contract between them. "I am asking for a conversation between him and the plaintiffs," said counsel for the defendant ; to which the court responded, "I understand that fully."

The learned counsel for the respondent seeks to uphold the ruling which I have discussed on the ground that the question which the court would not allow to be put to the witness related only to put and call transactions as distinguished from contracts for the future delivery of grain ; and he argues that inasmuch as puts and calls are illegal under the law of Illinois, irrespective of the intention of the parties, the exclusion of the evidence which the question called for was harmless.

The following extract from the record will show precisely what the counsel for the defendant sought to obtain from the witness :

"Q. I ask you now, was it your intention at the time these contracts or any one of them was made, to call for wheat on call contracts or to tender the wheat on the put contract, or merely to settle upon differences? A. No.

"Q. It was not your intention? . A. Simply to settle on differences.

"Q. Did you have any conversation with any member of the firm of the Allen, Grier & Zeller Company which would tend to show what their intention was?

"Mr. Goldbeck: I object to this question as leading.

"The Court: Objection sustained. I think you might

add incompetent, but the court excludes it *also* as incompetent. He cannot give his opinion as to that.

"Mr. Baldwin: I am asking now for a conversation between himself and the plaintiffs.

"The Court: I understand that fully.

"Exception."

The impression made upon my mind in reading these questions and the succeeding colloquy is that the inquiry of counsel conducting the examination was designed to relate and did relate to all the grain contracts out of which grew the note in suit, whether those contracts were put and call transactions or contracts for the future delivery of grain. If my view in this respect is correct the error in excluding the evidence is manifest. But if I am wrong in this regard and we are to ascribe to the question the restrictive meaning assigned to it by counsel for respondent, I think it was error to refuse to permit the defendant to answer whether it was his own intention to accept any delivery of wheat upon the contracts for future delivery. The learned Appellate Division upheld the ruling of the trial court sustaining an objection to a question designed to elicit a statement of the defendant's intention as to such contracts upon the ground that the question did not call for the further fact as to whether or not the defendant had communicated his intention to his brokers, saying that if the defendant had entertained an intention not to accept delivery and did not communicate that intention to them the evidence was immaterial under the authority of *Scanlon* v. *Warren* (*supra*). This would be all very well if it were possible for counsel to prove his entire case or defense by the answer to a single question. In order to establish the existence of a joint intention in the minds of both parties that there should be no actual deliveries of grain in fulfillment of contracts purporting to provide for such deliveries, it was essential to prove the existence of such intention in the mind of *each* party; and it was perfectly proper to attempt to do this first by inquiring of the defendant what his intention was and then to follow that up if possible by proof of the intention of the other party to the

contract. The Illinois authorities involving the construction of the statutes of that state directed against gambling contracts in grain all agree that the intention that there shall be no actual delivery must co-exist in the minds of both parties to the contract; and when the trial court in the present case prevented the defendant from testifying as to what his intention was, it prevented him from proving an essential element of his defense. No matter what he might afterwards establish as to the intention of the other parties to the contract this would not suffice to render the agreement illegal in the absence of proof as to his own intention; and this proof, as we have already seen, he was precluded from giving.

Our attention is called in behalf of the respondent to a number of decisions to the effect that a contract made in good faith for the actual sale of grain deliverable within a specified time in the future is not a gambling contract within the meaning of the Illinois statutes. (*White* v. *Barber*, 123 U. S. 392; *Logan* v. *Musick*, 81 Ill. 415; *Cole* v. *Milmine*, 88 Ill. 349.) I do not understand, however, that the correctness of this proposition is questioned by counsel for the appellant. Their position is simply that the contract for the purchase and sale of grain between parties who have no intention of receiving or delivering any grain but intend to settle by the payment of differences between the contract price of the grain and its market price when sold is a gambling contract which cannot be enforced and that a note made and delivered in settlement of losses in such a transaction is not enforceable in law. (See *Jamieson* v. *Wallace*, 167 Ill. 388; *Pearce* v. *Foote*, 113 Ill. 228.) The conversations between the parties to a contract which is alleged to have been of this objectionable character must always be material evidence as to the true nature of the transaction as appears by the opinion of the Supreme Court of Illinois in the case last cited. Not only so, but as was said by the court in *Jamieson* v. *Wallace* (*supra*), the intention of the parties may be established, not merely by their assertions, but by all the attending circumstances of the transaction. "The question of intention is a question for the jury or for the court, to be

determined by a consideration of all the evidence. The intention of the parties in such cases may be determined from the nature of the transaction, and from the manner and method of carrying on the business. * * * It makes no difference whether the real intention is formally expressed in words or not, if the facts and circumstances in proof show that it was the real understanding that there should be no actual purchase and no delivery or acceptance of the property involved in the contract, but merely an adjustment of damages upon differences."

In the new trial, which must be granted in this case by reason of the erroneous rulings which we have considered, a greater liberality on the part of the trial court in the admission of evidence will undoubtedly lead to a true ascertainment of the character of the transactions which gave rise to the note in suit.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and HISCOCK, JJ., concur.

Judgment reversed, etc.